IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD H. GREENE,

        Plaintiff,                    No. 2:09-cv-0793 JAM JFM (PC)

   vs.

JAMES TILTON, *et al.*,           <u>ORDER AND</u>

        Defendants.           <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on claims raised in plaintiff's complaint against defendants James Tilton, Mathew Cate and Suzan Lynn Hubbard. This matter is before the court on the parties' cross motions for summary judgment.

FACTS

        All facts stated herein are undisputed unless noted otherwise. At all times relevant to this action, plaintiff was incarcerated at Mule Creek State Prison ("MCSP"). James Tilton is the former Secretary of the California Department of Corrections and Rehabilitation ("CDCR"). Mathew Cate is the current Secretary of CDCR. Suzan Lynn Hubbard is the Deputy Director of CDCR.

/////

Section 3190 of the California Code of Regulations ("CCR") governs the type and amount of personal property that inmates may possess. See 15 CCR § 3190; see also CDCR Department Operations Manual ("DOM") §§ 54030.17.1 – 54030.17.9.3 (the "Authorized Personal Property Schedule ('APPS')" Matrix). Personal property not meeting the criteria in section 3190 will be disposed of by either mailing the property to an individual willing to accept the property (if the inmate has sufficient funds in his trust account), returning the item to the sender if the inmate has enough funds in his trust account, donating the property/items to a charitable organization as designated by the prison or to the prison, or disposing of the property/items according to prison procedures. See 15 CCR § 3191.

On August 24, 2007, a Notice of Change of Regulations ("the Notice"), which was posted at locations accessible to inmates, parolees and employees, notified the public that a hearing was scheduled concerning proposed modifications to sections 3190 and 3191 affecting the type and amount of personal property that inmates may possess. See Doc. No. 1 at 10-14.[1]

The gravamen of plaintiff's complaint is that the proposed modifications distinguished between the type and amount of personal property that male inmates could possess compared to the type and amount of personal property that female inmates could posses. Prior to the modifications, the APPS Matrix consisted of a single schedule for all inmates, male and female. Doc. No. 1 at 24. Following the modifications, the single-schedule APPS Matrix was converted into a five-schedule matrix. The schedule that applies to a particular inmate is determined by the institution mission of the prison where he or she is housed: (1) Reception Centers (DOM § 54030.17); (2) Levels I, II, III, Male Conservation Camps and Community Correctional Facilities (DOM § 54030.18); (3) Levels III and IV (DOM § 54030.19); (4) High

/////

---

[1] Attached to plaintiff's complaint are a number of documents that have not been identified with or separated by exhibit numbers. Accordingly, citation to these documents will be to the relevant page associated with the complaint's docket number (Doc. No. 1).

2

Security and Transitional Housing (DOM § 54030.20); and (5) Female Offenders Programs (DOM § 54030.21).

Facilities within the mission of the "Female Offenders Programs" serve as Reception Centers, providing short term housing to female inmates for initial assessment. Doc. No. 1 at 24. They also serve as long term housing and provide services to all levels of custody and security for female inmates. Id.

Under the new APPS Matrix, female inmates may possess certain items that no male inmate may possess, including specific pieces of personal clothing (personal jeans, robes, sandals, scarves); personal care and hygiene items (bath towels, body splash / spray, hair brush, cotton balls, emery boards and makeup, hair gel and spray, permanent curl / hair relaxer kit, hair ties, tweezers); food items (dried fruit and vegetables, peanut butter); miscellaneous items (antenna wire, can openers, clothes pins, eyeglass repair kits, hangers, immersion heaters, light bulbs, umbrellas); games (Scrabble, UNO); and other registerable items (chains / necklaces / bracelets / earrings, prescription glasses, rings with value not exceeding $150[2]). See DOM §§ 54030.17 – 54030.21.

The new APPS Matrix does not distinguish among female inmates on the basis of their security classifications, whereas it does distinguish between male inmates based on their security classifications. Compare DOM §§ 54030.17-54030.20 with § 54030.21.

The new APPS Matrix also sets forth limits on registerable appliances. While both male and female inmates are subject to a three-appliance limit, female inmates may possess the following appliances that male inmates may not possess: curling irons, hair dryers, electric hair rollers and pressing combs. See DOM § 54030.21.7.1. Whereas fans count toward the appliance limit for male inmates, they do not count toward the appliance limit for two of the three female institutions due to physical plant design. See id. Lastly, hot pots and immersion

---

[2] Male inmates may also possess rings, though the value of their rings is limited to $100. See, e.g., DOM § 54030.20.7.2.

3

heaters are considered registerable appliances for male inmates, but an immersion heater does not count as a registerable appliance for female inmates, and a hot pot is not listed as a registerable item at all for female inmates.

CDCR set forth its reasons for the modifications to sections 3091 and 3191 in its "Initial Statement of Reasons" ("ISOR"), which was posted with the Notice:

> Current [Division of Adult Institutions] policies provide a single property schedule for all inmates regardless of security level or institution mission. This currently makes it difficult to create incentives for inmates that program in a positive manner or to address issues specific to female offenders. Female offenders in particular have demonstrated a lower level of violence, less escape risk and a need for the building of self-esteem. [¶]
>
> The Department weighed institutional concerns against the concerns of inmates in order to determine reasonable personal property standards. Reasons requiring the personal property standards include, but are not limited to: (1) increases staff's ability to detect contraband, drugs, and weapons; (2) reduces the ability for inmates to barter or trade; (3) reduces inmate personal property claims; (4) provides property distinctions for the five mission-based programs; (5) reduces the ability of inmates to intimidate other inmates into relinquishing personal property; and (6) in the interest of security and safety.

Doc. No. 1 at 24.

The ISOR notes that "The Department, in proposing the amendments to these regulations, has not identified nor has it relied upon any technical, theoretical, or empirical study, report, or similar document." Doc. No. 1 at 16.

The ISOR also states that "[t]he personal property list is necessary due to the lack of storage space and constrictive conditions in the inmates' quarters / living area. . . . The intent is to permit the inmate population within a given mission-based program to possess as much personal property as practical, in keeping with safety and security needs." Doc. No. 1 at 15.

## PROCEDURAL BACKGROUND

Plaintiff initiated this action on March 23, 2009 alleging defendants violated (1) the Equal Protection Clause by imposing disparate property requirements for male and female inmates within CDCR; (2) the Due Process Clause and ex post facto laws by depriving plaintiff of previously-approved property; and (3) the Eighth Amendment by failing to exempt certain

appliances from the property requirement limits.  Plaintiff seeks declaratory and injunctive relief.  Defendants filed an answer on September 17, 2009.

On October 14, 2009, a scheduling order issued and was thereafter modified once.  See Doc. Nos. 19, 27.  Following the expiration of the time by which to file dispositive motions and the parties' failure to file any such motions, a further scheduling order issued setting forth dates for filing pretrial statements and a date for a jury trial.  Doc. No. 46.  Upon receipt of the pretrial statements, it became evident to the undersigned that resolution of this matter might be expedited by the filing of dispositive motions.  Therefore, the court vacated the trial date and ordered the parties to file such motions.  See Doc. No. 51.

On August 19, 2011, plaintiff filed a motion for summary judgment on his Equal Protection claim.  Doc. No. 53.  On August 29, 2011, defendants filed a motion for summary judgment on all of plaintiff's claims.  Doc. No. 55.  On September 9, 2011, defendants filed a motion to allow the late filing and consideration of a declaration of Bryan Holmes.  Doc. No. 61.  This request will be granted.  Both motions are now fully briefed and ready for disposition.

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be

5

entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
/////

6

genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

When parties file cross-motions for summary judgment, as the parties have done here, each motion "must be considered on its own merits." Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). To review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion. Riverside Two, 249 F.3d at 1136. And, although the parties may each assert that there are no uncontested issues of material fact, the court has a responsibility to determine whether disputed issues of material fact are present. Id.

On May 29, 2009, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

/////

EVIDENCE

A.   Request for Judicial Notice

Defendants ask the court to take judicial notice of various documents. Judicial Notice is governed by Federal Rule of Evidence 201, which governs only judicial notice of adjudicative facts. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. In other words, "the fact must be one that only an unreasonable person would insist on disputing." United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994).

Defendants ask the court to take judicial notice of: (a) California Gov't Code § 12838.5; (b) California Penal Code §§ 5058, 5058.3, 2601 and 5054; (c) 15 C.C.R. §§ 3090-3091; (d) CDCR DOM §§ 54030, 54030.1, 54030.7 and 54030.17; (e) CDCR's "Notice of Change to Regulations"; (f) "Notice of Adoption of Emergency Regulations" regarding CCR §§ 3090-3091; and (g) the "Initial Statement of Reasons – Inmate Personal Property."

The court may take judicial notice of state regulations which are readily ascertainable. See Roemer v. Board of Public Works of Maryland, 426 U.S. 736, 742 n.4 (1976). Accordingly, defendants' requests for judicial notice of the California regulations should be granted. Also, pursuant to Fed. R. Evid. 201(d), the court should also take judicial notice of the remaining CDCR documents as they are matters of public record.

B.   Plaintiff's Evidence

Much of plaintiff's evidence is submitted with his complaint and his April 18, 2011 pretrial statement. These include: (a) CDCR's "Notice of Change to Regulations"; (b) the "Initial Statement of Reasons – Inmate Personal Property"; (c) the APPS Matrix; (d) a photocopy of a broadcast calendar for educational programing at an unspecified institution; (e) plaintiff's affidavit; (f) the Ninth Circuit case Warsoldier v. Woodford et al., 418 F.3d 989 (9th Cir. 2005); and (g) various catalogs from which inmates purchase personal property.

8

C. <u>Defendants' Evidence</u>

Defendants submit the following in addition to those documents that have been judicially noticed: the declaration of defense counsel and the declaration of Bryan Holmes, a correctional officer at MCSP.

DISCUSSION

A. <u>The Equal Protection Clause</u>

Plaintiff seeks summary judgment on his equal protection claim on the ground that defendants cannot show a legitimate penological reason justifying the disparate property requirements. Defendants move for summary judgment on the ground that the disparate property requirements are reasonably related to a legitimate penological interest.

1. <u>Applicable Standard</u>

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." <u>City of Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985) (quoting <u>Plyler v. Doe</u>, 457 U.S. 202, 216 (1982)).

Generally, statutory classifications that distinguish between males and females are subject to heightened scrutiny under the Equal Protection Clause. <u>Craig v. Boren</u>, 429 U.S. 190 (1976). Thus, the disparate treatment of men and women is unconstitutional unless such treatment serves important governmental objectives and is substantially related to achievement of those objectives. <u>Id.</u> at 197.

In the prison context, however, it is unclear whether <u>Craig</u>'s heightened scrutiny standard applies or whether, as defendants argue, a standard of reasonableness applies per <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987). <u>Turner</u> stands for the proposition that even fundamental rights such as the right to equal protection are judged by a standard of reasonableness within the prison context – specifically, whether the actions of prison officials are "reasonably related to legitimate

penological interests." Under Turner, the court must ask whether a "valid rational connection" exists between defendants' actions "and the legitimate governmental interest put forward to justify" them. 482 U.S. at 89. Turner involved First Amendment constitutional challenges to Missouri prison regulations restricting an inmate's rights to correspond and to marry; the state justified the regulations that impinged on the inmates' rights primarily out of concern for institutional security. The Supreme Court reasoned that issues of day-to-day prison management are unsuited to judicial review, and that courts should not substitute their judgment for that of prison administrators. Thus, when a regulation restricting inmates' constitutionally protected rights is challenged, the Court held that the appropriate standard of review is whether the regulation is rationally related to a legitimate penological purpose. Turner, 482 U.S. at 89.

In the ensuing years, the Supreme Court expanded Turner's scope by applying it to "all cases in which a prisoner asserts that a prison regulation violates the Constitution, not just those in which the prisoner invokes the First Amendment." Washington v. Harper, 494 U.S. 210, 224 (1990). Accordingly, both the Supreme Court and lower courts applied the reasonableness standard to a variety of prisoners' constitutional claims. See, e.g., Shaw v. Murphy, 532 U.S. 223 (2001) (First Amendment claim); Goodwin v. Turner, 908 F.2d 1395, 1398-99 (8th Cir. 1990) (right to procreate); Wiley v. Trapp, 2004 WL 2011453 (D. Kan. 2004) (Equal Protection claim); Cosby v. Purkett, 782 F. Supp. 1324 (E.D. Mo. 1992) (Eighth Amendment claim).

In Johnson v. California, however, the Supreme Court curtailed the reach of Turner by holding that, when a prisoner challenges a prison policy as violative of the Equal Protection Clause's prohibition on race discrimination, the court must apply a strict scrutiny standard. Johnson v. California, 543 U.S. 499 (2005). The Court stated that "[t]he right not to be discriminated against based on one's race is not susceptible to the logic of Turner. It is not a right that need necessarily be compromised for the sake of proper prison administration." Id. at 510. In so holding, the Court upheld its pre-Turner decision in Lee v. Washington, 390 U.S. 333

1  (1968), which applied strict scrutiny in evaluating racial segregation in prisons. Johnson, 543
2  U.S. at 512 ("[W]e explicitly reaffirm what we implicitly held in Lee: The "necessities of prison
3  security and discipline," [ ] are a compelling government interest justifying only those uses of
4  race that are narrowly tailored to address those necessities."). The Court also applied strict
5  scrutiny to prisoners' Eighth Amendment claims of cruel and unusual punishment. Id. at 511.

6  Turning to the case at hand, then, the applicability of Turner is not as obvious as
7  defendants would assert. On the one hand, the Supreme Court has held that Turner applies to
8  "all cases in which a prisoner asserts that a prison regulation violates the Constitution, not just
9  those in which the prisoner invokes the First Amendment." Washington, 494 U.S. at 224. On
10 the other hand, the Court has held that Turner does not apply to claims where the right sought to
11 be protected is not a "right that need necessarily be compromised for the sake of proper prison
12 administration." Johnson, 543 U.S. at 510. Whether gender discrimination claims fall into the
13 latter group is a question that has yet to be decided by the Supreme Court. The Ninth Circuit,
14 when faced with this issue, declined to reach the question. See Jeldness v. Pearce, 30 F.3d 1220,
15 1231 (9th Cir. 1994). Other courts have split on this issue. The Fourth Circuit, for example, has
16 applied Turner to gender discrimination claims made by prisoners. See, e.g., Veney v. Wyche,
17 293 F.3d 726 (4th Cir. 2002). In contrast, the Eighth Circuit has recognized that, although
18 Turner applies to challenges to regulations that restrict inmates' constitutionally protected rights,
19 "[n]ot all reviews of prison policies or practices require judicial deference." Pargo v. Elliott, 49
20 F.3d 1355, 1356-57 (8th Cir. 1995). See also Leinweber v. Tilton, 2010 WL 3521869 (E.D.
21 Cal. 2010) (applying intermediate scrutiny to inmates' gender discrimination claim); Stevens v.
22 Williams, 2008 WL 916991 (D. Or. 2008) (holding that sex-based equal protection claims "are
23 justified only if substantially related to an important governmental objective, and "a party
24 seeking to uphold government action based on sex must establish an exceedingly persuasive
25 justification for the classification.") (citing United States v. Virginia, 518 U.S. 515 (1996));
26 Ashann-Ra v. Commonwealth of Virginia, 112 F. Supp. 2d 559 (W.D. Va. 2000) (same); Pitts v.

11

Thornburgh, 866 F.2d 1450 (D.C. Cir. 1989) (same); Batton v. State Gov't of North Carolina, Exec. Branch, 501 F. Supp. 1173 (D.C.N.C. 1980) (same).

In the absence of controlling caselaw, the court is compelled to find that the right to be free of gender discrimination is a "right that need [not] necessarily be compromised for the sake of proper prison administration." Johnson, 543 U.S. at 510. In so finding, the court is particularly persuaded by the district court's analysis in Pitts in discussing the dangers inherent in gender-based classifications:

> An elaboration of the[ ] dangers of gender discrimination both emphasizes the need for heightened scrutiny . . . and frames the inquiry for our forthcoming discussion. A classification relying explicitly upon gender peculiarly suggests that the state is pursuing an improper purpose, one that furthers or contains "fixed notions concerning the roles and abilities of males and females," Mississippi Univ. for Women, 458 U.S. at 725 [ ]–for example, embodying an objective "to exclude or 'protect' members of one gender because they are presumed to suffer from an inherent handicap or to be innately inferior." Id.; see Craig v. Boren, 429 U.S. 190, 198 (1976); Frontiero v. Richardson, 411 U.S. 677, 684 (1973). The facial classification especially raises the danger that the state has chosen means that are not substantially related to a legitimate state interest. The statute may not "employ[ ] gender as an inaccurate proxy for other, more germane bases of classification." Craig v. Boren, 429 U.S. at 198; see Mississippi Univ. for Women, 458 U.S. at 726. Nor may what the Supreme Court has condemned as "increasingly outdated misconceptions concerning the role of females in the home rather than in the 'marketplace and world of ideas' " underlie the classification based upon gender. Craig v. Boren, 429 U.S. at 198-99. . . .

866 F.2d at 1454-55.

As discussed more fully below, defendants argue that the disparate personal property requirements were implemented on the grounds that female inmates, as a whole and without regard to the nature of their commitment offense or their security classification, have a higher need for self-esteem building, are less violent and pose less of an escape risk than male inmates. These justifications appear to embody "fixed notions" concerning men and women and seek to protect one gender "because they are presumed to suffer from an inherent handicap or to be innately inferior." Because these types of arguments are precisely those that courts must consider with heightened scrutiny lest outdated gender notions persist, the court will apply Craig's heightened scrutiny standard to this case rather than Turner's reasonableness standard.

2.  Plaintiff's Motion for Summary Judgment

Plaintiff, a prison inmate proceeding pro se, has styled this action as one brought by himself for his own benefit and "on behalf of all others similarly situated." However, it is well-established that a lay person cannot ordinarily represent the interests of a class. See McShane v. United States, 366 F.2d 286 (9th Cir. 1966). This rule becomes almost absolute when, as here, the putative class representative is incarcerated and proceeding pro se. Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975). Furthermore, in the event plaintiff attempts to bring this action solely on behalf of himself, he has failed to show injury. At a minimum, Article III of the Constitution requires a plaintiff "to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982) (quotations and citations omitted). The actual or threatened injury must be real and immediate, rather than conjectural and hypothetical. Casey v. Lewis, 4 F.3d 1516, 1519 (9th Cir. 1993). Plaintiff here has not demonstrated any actual or threatened injury to himself. Thus, plaintiff is not entitled to summary judgment on this claim.

3.  Defendants' Motion for Summary Judgment

Defendants are also not entitled to summary judgment. Applying Craig's heightened scrutiny standard, the court finds that defendants have failed to meet their burden of showing that the regulations are substantially related to the achievement of important governmental objectives. While defendants argue that the state has a legitimate penological interest in safety and security at the prisons and that the disparate property requirements are due to "female offenders demonstrat[ing] a lower level of violence and less escape risk," see ISOR, Doc. No. 1 at 24; Holmes Decl. ¶ 3, their conclusory statements are insufficient on a motion for summary judgment. In fact, other than the Holmes declaration, defendants submit no evidence at all in support of their position. Thus, their motion should be denied on this ground .

/////

B.     The Due Process Clause

Defendants seek summary judgment on the ground that they met all mandated procedural requirements prior to modifying the APPS Matrix. Plaintiff does not move for summary judgment on this claim.

Examination of defendants' motion reveals that defendants incorrectly interpret plaintiff's claim as one asserting that CDCR failed to follow certain procedures prior to modification of the personal property matrix. This is an incorrect reading of plaintiff's complaint. Plaintiff's due process claim is premised on the assertion that defendants confiscated previously approved personal property without reimbursement for costs incurred. See Compl. at 5, 7. Because the ground upon which defendants seek summary judgment is not on point, defendants are not entitled to summary judgment.

C.     Qualified Immunity

Lastly, defendants assert they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Because plaintiff is not seeking damages, the doctrine of qualified immunity is inapplicable.

For all of the foregoing reasons, IT IS HEREBY ORDERED that defendants' motions to allow late filings and for judicial notice are granted; and

IT IS HEREBY RECOMMENDED that:

1. Defendants' motions for summary judgment be denied; and

2. Plaintiff's motion for summary judgment be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 95 1 F.2d 1153 (9th Cir. 1991).

DATED: March 1, 2012.

_____
UNITED STATES MAGISTRATE JUDGE

/014;gree0793.msj1